1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LATISHA LINDA KAYE WOODS, | Case No.  1:20-cv-01110-SAB |
| Plaintiff, | ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL |
| v. | (ECF Nos. 19, 24, 25) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**I.**

**INTRODUCTION**

Latisha Linda Kaye Woods ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]  Plaintiff submits that the ALJ erred by failing to evaluate Plaintiff's small fiber neuropathy, by failing to provide a clear and convincing reason to disregard Plaintiff's testimony, and in evaluating a nurse practitioner's opinion.  For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge.  (See ECF Nos. 7, 9, 10.)

## II.

## BACKGROUND

### A.    Procedural History

On November 16, 2016, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, and a Title XVI application for supplemental security income.  (AR 270-273, 274-283.)  Plaintiff's applications were initially denied on March 8, 2017, and denied upon reconsideration on June 6, 2017.  (AR 146-149, 154-159.)  Plaintiff requested and received a hearing before Administrative Law Judge Duane D. Young ("the ALJ").  Plaintiff appeared for a hearing on July 19, 2019.  (AR 49-89.)  On September 12, 2019, the ALJ found that Plaintiff was not disabled.  (AR 25-40.)  The Appeals Council denied Plaintiff's request for review on June 4, 2020.  (AR 1-7.)

On August 10, 2020, Plaintiff filed this action for judicial review.  (ECF No. 1.)  On February 2, 2021, Defendant filed the administrative record ("AR") in this action.  (ECF No. 11-1.)  On June 25, 2021, Plaintiff filed an opening brief.  (Pl.'s Opening Br. ("Br."), ECF No. 19.)  On September 23, 2021, following two stipulated extensions of time, Defendant filed an opposition brief.  (Def.'s Opp'n ("Opp'n"), ECF No. 24.)  On October 8, 2021, Plaintiff filed a reply brief.  (Pl.'s Reply ("Reply"), ECF No. 25.)

### B.    The ALJ's Findings of Fact and Conclusions of Law

The ALJ made the following findings of fact and conclusions of law as of the date of the decision, September 12, 2019:

- Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2020.

- Plaintiff has not engaged in substantial gainful activity since April 5, 2016, the alleged onset date.

- Plaintiff has the following severe impairments: lumbar spine degenerative disc disease at L4-5 level; lumbar radiculopathy; right knee patella friction syndrome; and asthma.

- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404,

Subpart P, Appendix 1.

- Plaintiff can lift and carry no more than 10 pounds, stand and walk 2 hours in an 8 -hiour workday, and sit 6 hours in an 8-hour workday.  She is capable of frequently balancing and occasionally stooping, kneeling, crouching, crawling, and climbing.  She is limited to occasional pushing and pulling with her right lower extremity.  She can have no more than occasional exposure to extreme cold, extreme heat, workplace hazards, and pulmonary irritants.

- Plaintiff is unable to perform any past relevant work

- Plaintiff was born on December 8, 1974 and was 41 years old, which is defined as a younger individual aged 180-44, on the alleged disability onset date.

- Plaintiff has at least a high school education and is able to communicate in English.

- Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the Plaintiff is "not disabled," whether or not the Plaintiff has transferable job skills.

- Considering the Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform.

- Plaintiff has not been under a disability, as defined in the Social Security Act, from April 5, 2016, through September 12, 2019.

(AR 24-34.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. §

404.1520;[2] <u>Batson v. Commissioner of Social Security Administration</u>, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

<u>Stout v. Commissioner, Social Sec. Admin.</u>, 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." <u>Hill v. Astrue</u>, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." <u>Thomas v. Barnhart</u>, 278 F.3d 947, 955 (9th Cir. 2002) (quoting <u>Flaten v. Sec'y of Health & Human Servs.</u>, 44 F.3d 1453, 1457 (9th Cir. 1995)).

---

[2] The cases generally cited herein reference the regulations which apply to disability insurance benefits, 20 C.F.R. §404.1501 et seq., however Plaintiff is also seeking supplemental security income, 20 C.F.R. § 416.901 et seq. The regulations are generally the same for both types of benefits. Therefore, further references are to the disability insurance benefits regulations, 20 C.F.R. §404.1501 et seq.

1    "[A] reviewing court must consider the entire record as a whole and may not affirm

2    simply by isolating a specific quantum of supporting evidence."  Hill, 698 F.3d at 1159 (quoting

3    Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006).  However, it is not

4    this Court's function to second guess the ALJ's conclusions and substitute the court's judgment

5    for the ALJ's.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is

6    susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be

7    upheld.").

8                                              **IV.**

9                            **DISCUSSION AND ANALYSIS**

10       Plaintiff raises three primary challenges in this appeal: (1) that the ALJ erred by failing to

11   evaluate Plaintiff's small fiber neuropathy; (2) that the ALJ erred by  failing to provide a clear

12   and convincing reason to disregard Plaintiff's testimony; and (3) the ALJ erred in the evaluation

13   of a nurse practitioner's opinion.

14       **A.       Whether the ALJ Erred in Evaluating Plaintiff's Small Fiber Neuropathy**

15       Plaintiff submits that the ALJ erred by failing to evaluate her small fiber neuropathy in

16   the disability analysis.  (Br. 19-22.)

17       1.    General Legal Standards

18       At step two of the five-step process, the ALJ assesses the medical severity of the

19   claimant's impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  An impairment is "severe" if it

20   significantly limits a claimant's ability to perform basic work activities for at least a consecutive

21   12-month period.  See 20 C.F.R. § 416.909 ("Unless your impairment is expected to result in

22   death, it must have lasted or must be expected to last for a continuous period of at least 12

23   months.").  "An impairment or combination of impairments is not severe if it does not

24   significantly limit your physical or mental ability to do basic work activities."  20 C.F.R. §

25   404.1522(a).  If there is not any impairment or combination of impairments which significantly

26   limits the claimant's physical or mental ability to do basic work activities, the claimant will be

27   found to not have a severe impairment and he or she would not be disabled.  20 C.F.R. §

28   404.1520(c).  Basic work activities are "the abilities and aptitudes necessary to do most jobs."

1   20 C.F.R § 404.1522(b).  This includes,

2       (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling,
        reaching, carrying, or handling;
3       (2) Capacities for seeing, hearing, and speaking;
        (3) Understanding, carrying out, and remembering simple instructions;
4       (4) Use of judgment;
        (5) Responding appropriately to supervision, co-workers and usual work
5       situations; and
        (6) Dealing with changes in a routine work setting.
6

7   20 C.F.R. § 404.1522(b).

8       At step two, the claimant has the burden to provide evidence of a medically determinable

9   physical or mental impairment that is severe and that has lasted or can be expected to last for a

10  continuous period of at least twelve months.  Ukolov v. Barnhart, 420 F.3d 1002, 1004-05 (9th

11  Cir. 2005); see also 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii); Bowen v. Yuckert, 482 U.S. 137,

12  148 (1987) (Secretary may deny Social Security disability benefits at step two if claimant does

13  not present evidence of a "medically severe impairment").   "[T]he ALJ must consider the

14  combined effect of all of the claimant's impairments on her ability to function, without regard to

15  whether each alone was sufficiently severe."  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir.

16  1996). "An impairment or combination of impairments can be found 'not severe' only if the

17  evidence establishes a slight abnormality that has 'no more than a minimal effect on an

18  individual[']s ability to work.' "  Smolen, 80 F.3d at 1290 (citations omitted).  Courts have found

19  that step two is "a de minimis screening device [used] to dispose of groundless claims."  Webb v.

20  Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (quoting S.S.R. No. 85–28 (1985); Smolen, 80 F.3d

21  at 1290).  "An impairment or combination of impairments can be found 'not severe' only if the

22  evidence establishes a slight abnormality that has 'no more than a minimal effect on an

23  individual[']s ability to work.' "  Smolen, 80 F.3d at 1290 (citing SSR 85-28).  Step two is a "de

24  minimis screening devise to dispose of groundless claims."  Id.; Webb v. Barnhart, 433 F.3d 683,

25  687 (9th Cir. 2005) (same).  An ALJ can only find that claimant's impairments or combination of

26  impairments are not severe "only when his conclusion is 'clearly established by medical

27  evidence' ".  Webb, 433 F.3d at 687 (quoting S.S.R. 85-28).  Thus, this Court "must determine

28  whether the ALJ had substantial evidence to find that the medical evidence clearly established

that [the claimant] did not have a medically severe impairment or combination of impairments."
Id.

If the ALJ finds some severe impairment(s) exist, then she will proceed to consider all impairments—severe and non-severe—in the subsequent steps.  See 20 C.F.R. § 416.923(c) ("In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity."); 20 C.F.R. § 416.945(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 416.920(c), 416.921, and 416.923, when we assess your residual functional capacity."). Even if an ALJ errs by failing to include an impairment as severe at step two, when an ALJ nonetheless considers limitations resulting from the impairment in formulating the RFC, any error in not considering the impairment to be severe is harmless. Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007); Burch v. Barnhart, 400 F.3d 676 (9th Cir.2005); see also Petersen v. Barnhart, 213 F. App'x 600, 605 (9th Cir. 2006) ("In Burch, the ALJ discussed the claimant's obesity and considered it in his RFC analysis . . . However, he did not mention obesity in his step two analysis . . . The Burch court assumed without deciding that this was legal error but concluded that the error was harmless because it would not have impacted the ALJ's analysis at either step four or five. . . . at step five, the ALJ explicitly noted the impact of the claimant's obesity on her back problems . . . Given that the ALJ in this case did not address Petersen's weight in either the step two or step five contexts, the ALJ's failure to consider the impact of her obesity cannot be considered harmless error under Burch.").

2.      The Parties' Arguments

The ALJ recognized some impairments as severe, and concluded Plaintiff's mental mood disorder was not severe (AR 27-28).  Plaintiff emphasizes she also submitted objective evidence of small fiber neuropathy including: a November 2016 nerve fiber punch biopsy that confirmed Plaintiff's small fiber neuropathy; LAGS treatment notes dated January 3, 2017, referencing the

1    additional diagnosis (AR 791); prescriptions for additional medications to target the condition

2    (AR 792); Plaintiff's continued reporting of tingling and numbness in her feet and fingers

3    affecting her grip, walking, and standing (AR 775, 828-829, 844, 994); and LAGs testing on

4    February 26, 2018 that revealed findings of abnormal sensation of dermatomes (areas of skin that

5    send signals to the brain through the spinal nerves) consistent with small fiber neuropathy (AR

6    830).  (Br. 21.)  Given this evidence supporting the existence of the condition, Plaintiff argues

7    the ALJ "did not acknowledge or analyze" small fiber neuropathy in the disability analysis, and

8    the omission was harmful error at the step two determination level.  (Br. 21-22, citing cases.)

9         Defendant responds that Plaintiff mistakenly presumes the ALJ is required to "rule

10   piecemeal on the severity of each alleged impairment," when instead the ALJ only must address

11   the cumulative effect of the impairment or impairments.  Defendant argues that because the ALJ

12   properly found at step two that Plaintiff did have severe impairments, when making the RFC

13   determination, it is irrelevant whether the ALJ specifically characterized Plaintiff's other

14   conditions to constitute separate severe impairments.  (Opp'n 9.)  Defendant argues the ALJ did

15   not dispose of the claim as groundless, but rather found Plaintiff satisfied the severity

16   requirement at step two, proceeded with the disability analysis, and considered all of the

17   functional limitations established by the reliable evidence, not just those identified as severe.

18   Specifically, Defendant highlights that the ALJ considered evidence regarding small fiber

19   neuropathy in reaching the RFC finding, and accounted for this evidence by restricting Plaintiff

20   to the most restrictive of all of the work categories – sedentary work – with additional postural

21   and environmental limitations, inclusive of further pushing and pulling limitations with the right

22   lower extremity (AR 29), and thus Plaintiff's argument that certain impairments were severe is

23   immaterial, as the ALJ considered all of the functional limitations established by the medical

24   evidence, regardless of severity.  (Br. 10.)  Accordingly, Defendant submits any alleged error at

25   step two would not have affected the ultimate disability determination and thus would be

26   harmless.

27        In reply, Plaintiff concedes that it is generally true that the failure to find an impairment

28   severe at step two may be harmless if the ALJ incorporates functional limitations from that

1    impairment in the remaining steps.  (Reply 3.)  However here, Plaintiff argues that while the ALJ
2    did subsequently reference the small fiber neuropathy diagnosis, there is no evidence to support
3    the Defendant's assertion that the ALJ accounted for the impairment by finding Plaintiff was
4    limited to sedentary work with occasional pulling and pushing with the right lower extremity, as
5    evidence not discussed or referenced by the ALJ reveals Plaintiff experienced dizziness and loss
6    of balance, as well as tingling and numbness in the hands and feet, and there is no indication the
7    ALJ recognized the symptoms of the small fiber neuropathy.  Plaintiff argues the ALJ's
8    assessment that Plaintiff could frequently balance and is only limited in the right lower extremity
9    does not appear to account for these limitations.

10           3.      The Court Concludes that any Omission of Small Fiber Neuropathy at Step Two
11                   was Harmless Error given the Inclusion of the Condition in the RFC Analysis

12           The ALJ must consider both severe and nonsevere medically determinable impairments
13   when determining the RFC.  See 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your
14   medically determinable impairments of which we are aware, including your medically
15   determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and
16   404.1523, when we assess your residual functional capacity."); 20 C.F.R. § 404.1545(e) ("When
17   you have a severe impairment(s), but your symptoms, signs, and laboratory findings do not meet
18   or equal those of a listed impairment in appendix 1 of this subpart, we will consider the limiting
19   effects of all your impairment(s), even those that are not severe, in determining your residual
20   functional capacity.").  As noted above, even if an ALJ errs by failing to include an impairment
21   as severe at step two, when an ALJ nonetheless considers limitations resulting from the
22   impairment in formulating the RFC, any error in not considering the impairment to be severe is
23   harmless.  Lewis, 498 F.3d at 911; Burch, 400 F.3d 676; Petersen, 213 F. App'x at 605.

24           Plaintiff initially proffered "the ALJ did not acknowledge or analyze Small Fiber
25   Neuropathy in the disability analysis."  (Br. 21.)  This is clearly not true based on a review of the
26   RFC section of the ALJ's opinion.  (AR 29.)  Defendant noted in opposition that the ALJ did
27   discuss the diagnosis in the RFC analysis.  Thereafter, while Plaintiff concedes that generally,
28   any step two omission may be harmless if the ALJ incorporates functional limitations from that

1  impairment into the RFC determination, Plaintiff now focuses her argument on the contention

2  that the ALJ's discussion of small fiber neuropathy did not sufficiently account for the

3  impairment's limitations, and proffers that "[t]here is no indication that the ALJ recognized the

4  symptoms of small fiber neuropathy."  (Reply 3.)

5       Based on a review of the ALJ's RFC analysis, the Court concludes the ALJ sufficiently

6  discussed the small fiber neuropathy and its impairments, when the ALJ expressly and repeatedly

7  noted the diagnosis when summarizing and considering the totality of the pertinent medical

8  records form the medical providers that assessed and treated Plaintiff for that condition and

9  related conditions.  Therefore, while the ALJ did not expressly find Plaintiff's small fiber

10 neuropathy to be severe or nonsevere at step two, any omission of a direct finding in that regard

11 at step two, if error, would be harmless.  See Lewis, 498 F.3d at 911; Burch, 400 F.3d 676;

12 Petersen, 213 F. App'x at 605.

13      The ALJ generally acknowledged that in making the RFC finding, the ALJ "must

14 consider all of the claimant's impairments, including impairments that are not severe."  (AR 27.)

15 In making the RFC determination, the ALJ in fact did discuss Plaintiff's small fiber neuropathy

16 diagnosis, as well as records pertaining to related complaints and diagnoses, when the ALJ

17 summarized the Plaintiff's medical records from LAGS Spine and Sportscare dated between

18 December of 2015 and January of 2019, as well as with treating Doctor Dhillon during a similar

19 time period of April 2015 through February of 2019.  (AR 29.)  In full, the ALJ summarized the

20 following records in the RFC section of the opinion:

21         The medical evidence shows the claimant was seen at LAGS Spine
   and Sportscare between December 2015 and January 2019 . . . She
22         complained of low back pain with constant numbness and tingling
   in her right leg in December 2015.  The range of motion in the
23         claimant's lumber spine was abnormal, and straight leg raising was
   positive both sitting and supine.  She was diagnosed with lumbar
24         radiculopathy, and signed a pain contract.  The claimant declined
   medial branch block injections because she was seeing a
25         chiropractor . . . She was prescribed a brace for her right knee in
   October 2016 . . . A November 2016 nerve conduction study was
26         normal, and there was no evidence of large fiber peripheral
   polyneuropathy.  Lumbar Radiculopathy was not assessed because
27         the claimant declined a needle electromyogram due to fear of pain .
   . .She underwent an epidural nerve fiber density skin lesion punch
28         biopsy in November 2016 . . . Small fiber neuropathy was added to

1     her diagnoses in January 2017, and osteoarthritis of the right knee
      in March 2017 . . . At an October 2018 visit, spinal stenosis of the
2     lumbar region was added . . .

3     Internist Gurmej Dhillon, MD, treated the claimant for general
      illnesses between April 2015 and February 2019 . . . She was
4     initially seen for right hip and leg pain.  X-rays of her right hip
      were normal.  The claimant was diagnosed with right hip pain and
5     asthma, and was referred for physical therapy . . . An August 2015
      magnetic resonance imaging . . . of her right leg was unremarkable
6     . . . A MRI of her lumbar spine performed at the same time
      demonstrated straightening of the physiologic lumbar lordosis due
7     to muscle spasms; degenerative disc desiccation at L4-L5 with a
      posterior disc bulge, and spinal canal stenosis . . . The claimant
8     was seen in December 2015 for low back pain and numbness and
      tingling in her right leg.  She displayed range of motion deficits in
9     her lumbar spine, straight leg raising was positive on the right, and
      she was tender to palpation over the right lumbar paraspinals.  The
10    claimant was diagnosed with lumbar radiculopathy and anemia . . .
      April 2016 x-rays of her cervical spine revealed mild disc space
11    narrowing and marginal osteophyte formation at C4-C5 and C5-C6
      . . . In January 2017, she was tender to palpation over her right
12    knee, with crepitus.  Right knee pain and small fiber neuropathy
      were added to her diagnoses, and she was scheduled for long-term
13    opiate analgesic use . . . A March 2018 MRI of her right knee
      likely indicated patellar tendon friction syndrome . . . The claimant
14    complained of numbness in her right hand, right knee pain, and
      memory loss at an April 2017 appointment.  She was diagnosed
15    with disc herniation of the lumbar spine; headaches; bradycardia;
      asthma; anemia, depression with anxiety; neck pain; and right knee
16    pain . . .

17    Nurse practitioner Ramanpreet Sandhu from the office of Gurmej
      S. Dhillon, completed a Physical Medical Source Statement in
18    February 2019.  He diagnosed the claimant with right hip pain,
      lumbar pain, neck pain, degenerative disc desiccation in her
19    lumbar spine, and numbness and tingling radiating to her lower
      extremities.

20

21    (AR 29-30.)

22        Thus, when discussing the medical evidence pertaining to Plaintiff's visits at "LAGS

23    Spine and Sportscare between December 2015 and January 2019," the ALJ specifically noted

24    that Plaintiff "underwent an epidural nerve fiber density skin lesion punch biopsy in November

25    2016 . . . Small fiber neuropathy was added to her diagnoses in January 2017, and osteoarthritis

26    of the right knee in March 2017."  (AR 29.)  Further in the opinion, the ALJ again noted that in

27    "January 2017, she was tender to palpation over her right knee, with crepitus.  Right knee pain

28    and small fiber neuropathy were added to her diagnoses, and she was scheduled for long-term

opiate analgesic use." (AR 29.) The ALJ noted complaints of numbness in the right hand, as well as "numbness and tingling radiating to her lower extremities." (AR 30.) The ALJ considered Plaintiff's testimony concerning her limitations, including the ability to stand and walk, as well as testimony concerning Plaintiff's ability to complete daily activities, including getting in and out of the shower. (AR 31-32.) The Court does not find a further express reference to reports of balance issues, numbness, or tingling, to constitute harmful error, based on the ALJ's review and analysis of the totality of the records and medical opinions in the RFC section.

Accordingly, based on the ALJ's discussion of records and complaints pertaining to small fiber neuropathy and other concurrent conditions complained of and diagnosed over the same time period in the RFC section, even if the ALJ had erred in at step two, the Court would find any error in the severity analysis to be harmless. Lewis, 498 F.3d at 911; Burch, 400 F.3d 676; Petersen, 213 F. App'x at 605. The Court rejects Plaintiff's challenge that the ALJ "did not acknowledge or analyze" small fiber neuropathy in the disability analysis, and that the omission was harmful error at the step two determination level. The Court finds no remandable legal error.

**B.      Whether the ALJ Provided Clear and Convincing Reasons to Reject Plaintiff's Testimony**

Plaintiff submits that the ALJ's rejection of Plaintiff's testimony on the basis of being inconsistent was not a clear and convincing reason to discount the testimony. (Br. 23-25.)

1.      The Clear and Convincing Standard for Weighing Credibility

"An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (internal punctuation and citations omitted). Determining whether a claimant's testimony regarding subjective pain or symptoms is credible requires the ALJ to engage in a two-step analysis. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th

1   Cir. 2007) (internal punctuation and citations omitted).  This does not require the claimant to

2   show that her impairment could be expected to cause the severity of the symptoms that are

3   alleged, but only that it reasonably could have caused some degree of symptoms.  Smolen, 80

4   F.3d at 1282.

5          Second, if the first test is met and there is no evidence of malingering, the ALJ can only

6   reject the claimant's testimony regarding the severity of her symptoms by offering "clear and

7   convincing reasons" for the adverse credibility finding.  Carmickle v. Commissioner of Social

8   Security, 533 F.3d 1155, 1160 (9th Cir. 2008).  The ALJ must make findings that support this

9   conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude

10  the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit

11  the claimant's testimony.  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).

12         Factors that may be considered in assessing a claimant's subjective pain and symptom

13  testimony include the claimant's daily activities; the location, duration, intensity and frequency

14  of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage,

15  effectiveness or side effects of any medication; other measures or treatment used for relief;

16  functional restrictions; and other relevant factors.  Lingenfelter, 504 F.3d at 1040; Thomas, 278

17  F.3d at 958.  In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary

18  techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent

19  statements concerning the symptoms, and other testimony by the claimant that appears less than

20  candid; [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a

21  prescribed course of treatment."  Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008)

22  (quoting Smolen, 80 F.3d at 1284).

23         2.     The ALJ's Credibility Determination

24         The ALJ made the following findings and proffered the following reasons for discounting

25  Plaintiff's subjective symptom testimony:

26              As for the claimant's statements about the intensity, persistence,
                and limiting effects of her symptoms, they are inconsistent.
27              Although she reported being unable to drive or perform many
                activities of daily living, she reported in December 2016 to
28              physician's assistant Heliodoro Magana at LAGS Sportscare, that

she was able to drive, cook, clean her home, bathe and dress herself [AR 483].  However, the record indicates she told family nurse practitioner Ritu Grewai in April 2017 that she was no longer able to perform her activities of daily living, and he requested in-house supportive services [AR 994].  At the hearing the claimant testified she received IHSS, and the caregiver helped with cooking, cleaning, and getting in and out of the shower.

The claimant's allegations about her limitations are inconsistent with the extent of limitations indicated by the objective medical opinions in file.  The objective medical evidence does not reasonably support her allegations of such debilitating limitations, or the need to elevate her leg as much as 80-90% of the day, or sleep an extra 6-7 hours a day in addition to her sleep throughout the night.  State agency determined in 2017 that she was at a range of light work, after having reviewed the 2015 MRI of her lumbar spine.  However, they did not have an opportunity to review the right knee MRI, which reasonably justifies finding some limitations in the claimant's ability to perform standing and walking activity.  Therefore, a reduction to sedentary work activity is reasonable and justified by the medical evidence of record.  Despite evidence demonstrating the claimant has suffered from medically determinable "severe" impairments, the evidence also demonstrates that the claimant retains the capacity to function adequately and perform many basic activities associated with work.

(AR 31.)

    3.    The Parties' Arguments

Plaintiff concedes that inconsistent statements can be appropriately used to weigh the credibility of testimony, however, Plaintiff argues that here the "inconsistency" is simply the worsening of symptoms over time, and the Commissioner's guidelines recognize such, SSR 16-3p.[3]  Plaintiff proffers medical records confirm her impairments and demonstrate progressive worsening during the time period, specifically, that: at the end of December of 2016, Dr. Dhillon's office completed necessary forms for Plaintiff to receive in-house supportive services due to the worsening impairments (AR 695); in January 2017, Plaintiff's pain level increased to a level seven out of ten with medications (AR 788); in February of 2017, Plaintiff fell in her home

---

[3]  "However, inconsistencies in an individual's statements made at varying times does not necessarily mean they are inaccurate.  Symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time.  This may explain why an individual's statements vary when describing the intensity, persistence, or functional effects of symptoms."  Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Oct. 25, 2017).

1   due to weakness and numbness in her legs, particularly the right (AR 786); Plaintiff was

2   provided a knee brace for knee pain and instability in March of 2017; treatment notes dated April

3   4, 2017, stated Plaintiff needed her daughter to help her by doing cleaning and cooking (AR

4   775); and later in April of 2017, Dr. Dhillon's office assisted Plaintiff with the required disability

5   forms (AR 988). (Br. 24.) As for the remaining reason proffered by the ALJ, that the statements

6   were inconsistent with the objective medical evidence, Plaintiff argues the record is contrary to

7   the ALJ's conclusion, as for example as to the need for sleeping an extra 6-7 hours a day, the

8   record is replete with her reports that her pain disturbs her sleep at night (AR 586, 606, 771, 821,

9   834, 839, 843, 854, 863, 867, 872, 878, 882), and more significant, Plaintiff emphasizes that the

10  ALJ may not base the credibility determination solely on the medical evidence, and because the

11  first reason fails, the other purported inconsistency is not sufficient.

12      Defendant argues the ALJ properly and reasonably declined to find the record supported

13  the full extent of Plaintiff's subjective complaints, in consideration of the objective medical

14  evidence, activities of daily living, and the expert opinions of agency physicians that opined

15  Plaintiff could perform a range of medium to light work. (Opp'n 12.) Defendant proffers

16  Plaintiff in fact reported to her medical provides from April of 2016 to February of 2017, that she

17  could drive, cook, clean her home, bathe, and dress herself. (AR 32, 493-94, 499, 503, 508, 513,

18  517, 552, 557). Then, in April of 2017, Defendant states that Plaintiff, "without providing any

19  sufficient explanation and while reporting improved symptoms around the same time, Plaintiff

20  reported that she could no longer drive, and needed help with cleaning, cooking, bathing, and

21  dressing herself." (AR 773.) As for Plaintiff's argument of worsening symptoms from

22  December of 2016 to April of 2017, Defendant states this evidence is unavailing, highlighting

23  that while Plaintiff reported a pain level of 7/10 in January of 2017 (AR 556), she also reported

24  an ability to drive, cook, clean, bathe, and dress herself that same month, and in February of

25  2017, which contradicts the assertion that the change in activities was due to the increased pain

26  to a level 7/10 in January of 2017. Additionally in April of 2017, and in months thereafter,

27  Plaintiff reported a decreased pain level, including a level 4/10 with medication, which again

28  contradicts the allegation that the more restrictive activities in April 2017 were due to worsening

1  pain.

2     3.     The Court finds the ALJ Provided a Clear and Convincing Reason for Rejecting
3            Plaintiff's Testimony

4          There are two grounds to use daily activities for an adverse credibility finding.  Orn v.

5  Astrue, 495 F.3d 625, 639 (9th Cir. 2007).  First, daily activities can form the basis of an adverse

6  credibility determination if the claimant's activity contradicts his testimony.  Orn, 495 F.3d at

7  639.  Secondly, "daily activities may be grounds for an adverse credibility finding 'if a claimant

8  is able to spend a substantial part of his day engaged in pursuits involving the performance of

9  physical functions that are transferable to a work setting.' "  Id. (quoting Fair v. Bowen, 885 F.2d

10 597, 603 (9th Cir. 1989)).  The ALJ must make specific findings as to the daily activities and

11 their transferability to conclude that the claimant's daily activities warrant an adverse credibility

12 determination.  Orn, 495 F.3d at 639.  "[T]he mere fact that a plaintiff has carried on certain

13 daily activities . . . does not in any way detract from her credibility as to her overall disability."

14 Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (citing Vertigan v. Halter, 260 F.3d 1044, 1050

15 (9th Cir. 2001)).

16         On April 22, 2016, Plaintiff reported the ability to clean home, drive, cook, and

17 bathe/dress, and reported one fall in the last year without injury.  (AR 518.)  On May 24, 2016,

18 Plaintiff reported the ability to clean home, drive, cook, and bathe/dress.  (AR 513.)  On July 26,

19 2016, Plaintiff reported the ability to clean home, drive, cook, and bathe/dress, and reported no

20 falls within the last year and no balance issues.  (AR 508.)  On August 26, 2016, Plaintiff

21 reported the ability to clean home, drive, cook, and bathe/dress, and reported no falls within the

22 last year.  (AR 502.)  On September 26, 2016, Plaintiff reported the ability to clean home, drive,

23 cook, and bathe/dress.  (AR 498.)  On October 31, 2016, Plaintiff reported the ability to clean

24 home, drive, cook, and bathe/dress.  (AR 492-93.)  On January 3, 2017, Plaintiff reported the

25 ability to clean home, drive, cook, and bathe/dress.  (AR 557.)  On February 3, 2017, Plaintiff

26 again reported the ability to clean home, drive, cook, and bathe/dress.  (AR 552.)  On February

27 15, 2017, Plaintiff had a comprehensive internal medicine evaluation and reported that she cooks

28 and cleans, does not have a driver's license, "shops and performs her own activities of daily

living without assistance," and "does some walking and some physical therapy type exercises for exercise." (AR 1070.)  However, on April 7, 2017, Plaintiff reported an inability to drive, and an inability to clean, cook, or bathe/dress, without help.  (AR 773.)

While the ALJ only referenced the December 2016 report of the ability to complete daily activities, based on this record, the Court finds the ALJ's finding of inconsistency in Plaintiff's reporting of her ability to perform activities of daily living to be a clear and convincing reason for discounting her symptom testimony.  Orn, 495 F.3d at 639; see also Tommasetti, 533 F.3d at 1039 (the ALJ may consider "(1) ordinary techniques of credibility evaluation, such as . . . prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid") (quoting Smolen, 80 F.3d at 1284).

Plaintiff argues the change in reported daily activities is properly attributed to worsening symptoms, a reported increase in pain level, and a fall that occurred in the home.  The Court does not find these arguments convincing in light of the totality of the record.  On October 31, 2016, Plaintiff reported pain at a level 4/10 with medication, and 8/10 without.  (AR 491.)  As Plaintiff notes, on January 3, 2017, Plaintiff reported a pain level of 7/10 with medication, and 10/10 without.  (AR 788.)  Additionally, on March 6, 2017, Plaintiff reported a pain level of 7/10 with medication, and 10/10 without.  (AR 777-78.)  However, on this same date of March 6, 2017, Plaintiff also reported the ability to complete daily activities.  (AR 777.)  Significantly, on the same date of Plaintiff's reporting of an inability to complete daily activities, April 7, 2017, Plaintiff again reported a level 4/10 pain with medication, and 8/10 without medication.  (AR 771.)  Further, on October 26, 2017, Plaintiff reported a level 4/10 with medication, 8/10 without, and on September 28, 2018, October 29, 2018, and December 5, 2018, Plaintiff reported a level 3/10 with medication, 6/10 without.  (AR 816, 821, 827, 853.)

While in reply, Plaintiff argues the ALJ did not cite to this evidence, the Court nonetheless finds the ALJ's finding of inconsistency to be clear and convincing, and supported by substantial evidence in the record.  Accordingly, the Court concludes the ALJ's discounting of Plaintiff's testimony for being inconsistent as to reported daily activities, is a clear and convincing reason supported by substantial evidence.  Orn, 495 F.3d at 639; Tommasetti, 533

1  F.3d at 1039.

2      Finally, while a lack of objective medical evidence cannot form the sole basis presented

3  by the ALJ for rejecting pain testimony, it is a proper factor the ALJ may consider in weighing a

4  claimant's testimony.  See Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) ("The fact

5  that a claimant's testimony is not fully corroborated by the objective medical findings, in and of

6  itself, is not a clear and convincing reason for rejecting it."); Burch, 400 F.3d at 680-81

7  ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony,

8  it is a factor that the ALJ can consider in his credibility analysis . . . Contrary to Burch's

9  argument, the ALJ did not solely rely on the minimal objective evidence and Burch's daily

10  activities in discrediting her testimony.  Indeed, these factors were among those he relied on,

11  however, the ALJ made additional specific findings to support his credibility determination.").

12  Here, the ALJ stated "[t]he claimant's allegations about her limitations are inconsistent with the

13  extent of limitations indicated by the objective medical opinions in file [and] [t]he objective

14  medical evidence does not reasonably support her allegations of such debilitating limitations."

15  (AR 31.)  Based on the state agency opinions, and the totality of the medical records, the Court

16  finds these were proper determinations supported by substantial evidence, and even if not

17  sufficient standing alone,[4] are clear and convincing determinations when considered in

18

---

19  [4] While a *lack* of objective medical evidence may not be the sole basis for rejection of symptom testimony, inconsistency with the medical evidence or medical opinions can be sufficient.  See Carmickle v. Comm'r, 533 F.3d

20  1155, 1161 (9th Cir. 2008); Streeter v. Berryhill, No. 1:17-CV-01450-JDP, 2019 WL 1060041, at *5 (E.D. Cal. Mar. 6, 2019) ("Furthermore, the extensive medical evidence summarized above provides clear and convincing reasons supported by substantial evidence for the ALJ's credibility determination."), aff'd sub nom. Streeter v. Saul, 835 F.

21  App'x 305 (9th Cir. 2021).  The use of objective medical records and physician opinions may together satisfy the clear and convincing standard, as utilized here and affirmed in the unpublished opinion in Stobie:

22

23      Nor did the ALJ's credibility finding impermissibly rely exclusively on a lack of medical evidence.
        The ALJ gave two . . . clear and convincing reasons . . . First, there was insufficient objective

24      medical evidence to establish disability during the insured period. Burch v. Barnhart, 400 F.3d
        676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for

25      discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").
        Second, Stobie's subjective symptom testimony conflicted with the objective medical evidence . . .

26      and Stobie's treating physician opined that Stobie could perform sedentary work eight months after
        his last insured date. *Molina*, 674 F.3d at 1113 (the ALJ can reject symptom testimony that is
        inconsistent with the objective medical evidence); *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th

27      Cir. 2014) (treating physician opinions are entitled to the greatest weight).

28  Stobie v. Berryhill, 690 F. App'x 910, 911 (9th Cir. 2017).

1   conjunction with the findings regarding Plaintiff's inconsistent reported daily activities.  See

2   Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008) ("In addition, the medical

3   evidence, including Dr. Eather's report and Dr. Neville's report—which both found [claimant]

4   could perform a limited range of work—support the ALJ's credibility determination.");

5   Kallenbach v. Berryhill, 766 F. App'x 518, 521 (9th Cir. 2019) ("The ALJ provided specific,

6   clear, and convincing reasons for discounting Kallenbach's testimony, including inconsistencies

7   between Kallenbach's allegations of impairment and his medical treatment records,

8   inconsistencies between the medical opinion evidence and Kallenbach's testimony, and

9   Kallenbach's failure to seek and adhere to prescribed treatment."); Lake v. Colvin, 633 F. App'x

10  414, 415 (9th Cir. 2016) ("The ALJ provided specific, clear, and convincing reasons for the

11  credibility assessment, including inconsistencies between Lake's testimony regarding his

12  limitations and the medical opinions and documentary evidence.").

13  **C.      Whether the ALJ Erred in Evaluating the Opinion of the Nurse Practitioner**

14  Plaintiff claims the ALJ failed to provide germane reasons to discount the opinion of

15  nurse practitioner Ramanpreet Sandhu's ("Nurse Sandhu").  (Br. 26-27.)

16  1.      General Legal Standards

17  Under the Social Security regulations, "licensed physicians and certain other qualified

18  specialists are considered '[a]cceptable medical sources.' "  Molina v. Astrue, 674 F.3d 1104,

19  1111 (9th Cir. 2012) (quoting 20 C.F.R. § 404.1513(a)).  To reject the testimony of a medically

20  acceptable treating source, the ALJ must provide specific, legitimate reasons based on substantial

21  evidence in the record.  Molina, 674 F.3d at 1111 (citing Valentine v. Comm'r Soc. Sec. Admin.,

22  574 F.3d 685, 692 (9th Cir. 2009)).

23  A nurse practitioner is considered an other medical source and is not entitled to the same

24  deference as acceptable medical sources.  Britton v. Colvin, 787 F.3d 1011, 1013 (9th Cir. 2015);

25  Molina, 674 F.3d at 1111.  The ALJ only needs to provide reasons germane to the witness to

26  discount testimony from these other sources.  Molina, 674 F.3d at 111; SSR 06–03p; Turner v.

27  Comm'r of Soc. Sec., 613 F.3d 1217, 1224 (9th Cir.2010); Revels v. Berryhill, 874 F.3d 648,

28  655 (9th Cir. 2017).  As the Ninth Circuit explains:

In addition to considering the medical opinions of doctors, an ALJ must consider the opinions of medical providers who are not within the definition of "acceptable medical sources." *See* 20 C.F.R. § 404.1527(b), (f); SSR 06-3P. While those providers' opinions are not entitled to the same deference, an ALJ may give less deference to "other sources" only if the ALJ gives reasons germane to each witness for doing so. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). The same factors used to evaluate the opinions of medical providers who are acceptable medical sources are used to evaluate the opinions of those who are not. *Id.* § 404.1527(f); SSR 06-3P. Those factors include the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the doctor. *Id.* § 404.1527(c)(2)–(6). Under certain circumstances, the opinion of a treating provider who is not an acceptable medical source may be given greater weight than the opinion of a treating provider who is—for example, when the provider "has seen the individual more often than the treating source, has provided better supporting evidence and a better explanation for the opinion, and the opinion is more consistent with the evidence as a whole." *Id.* § 404.1527(f)(1).

Revels, 874 F.3d at 655.

### 2.   The ALJ Opinion

The ALJ summarized Nurse Sandhu's treatment records pertaining to Plaintiff, and discounted the opinion, as follows:

Nurse practitioner Ramanpreet Sandhu . . . completed a Physical Medical Source Statement in February 2019.  He diagnosed the claimant with right hip pain, lumbar pain, neck pain, degenerative disc desiccation in her lumbar spine, and numbness and tingling radiating to her lower extremities.  She had depression, which affected her physical condition.  He opined the claimant was capable of lifting and carry[ing] less than 10 pounds, standing and walking for less than 2 hours in an 8-hour workday, and sitting for 2 hours in an 8-hour workday.  She must be permitted to shift positions at will, and permitted to walk for up to 10 minutes every hour-and-a-half.  The claimant should elevate her legs to 30 degrees 50% of the workday.  She was precluded from stooping, crouching and climbing ladders.  The claimant was capable of occasionally twisting, and rarely climbing stairs.  She was incapable of even low stress work due to depression and anxiety.  The claimant would likely miss more than 4 days of work each month (Exhibit 13F).

Although a nurse practitioner is not considered an "acceptable medical source" within the regulatory definition . . . this opinion has been considered and accorded little weight.  No start or end dates were specified regarding the limitations.  Furthermore, it is inconsistent with the other objective medical opinions in the file.

(AR 30.)

3.     The Parties' Arguments

The parties agree that in order to discount Nurse Sandhu's opinion, the ALJ was required to articulate reasons "germane" to the opinion.

Plaintiff states that while it is true Nurse Sandhu did not specify the earliest date the limitations would apply, Nurse Sandhu did indicate that she had been treating Plaintiff monthly for one year (AR 903).  Plaintiff additionally notes that the medical source statement "does not exist in a vacuum; it is accompanied and supported by over four years of LAGS treatment notes."[5]  While Plaintiff concedes that inconsistency of a medical opinion with the record as a whole is a germane factor for an ALJ to consider in evaluating an "other source," the ALJ here failed to clearly demonstrate any inconsistency with Nurse Sandhu's opinion regarding Plaintiff's need for breaks, need to elevate her legs, and that she would be likely to miss work. (Br. 26.)  Specifically, Plaintiff highlights that all other medical opinions were issued in 2017, two years prior to Nurse Sandhu's opinion  (Br. 26-27.)

Defendant responds that the ALJ noted agency physician Dr. Bullard opined Plaintiff could perform a range of medium work (AR 30, 95-97, 105-107); and noted agency physician Dr. Packer opined Plaintiff could perform a range of light work (AR 122-25, 138-41). Further, while not expressly summarized in the ALJ's opinion, consultative examiner Dr. Wagner opined that Plaintiff could perform a range of medium work (AR 1070-1073).  Therefore, Defendant accurately highlights that Nurse Sandhu's opinion differed from all of the other opinions in the record from three acceptable medical sources, and Nurse Sandhu was not entitled to the same deference as that of an acceptable medical source.  Further, Defendant argues that the ALJ's findings elsewhere in the opinion that the objective medical evidence did not support limitations such as the need for leg elevation and extended sleep hours (AR 32), and discussion of reported daily activities (AR 32), supported the ALJ's germane reasons for giving little weight to Dr. Sandhu's opinion.

---

[5]  As conceded in reply briefing, Plaintiff's opening brief mistakenly referred the Court to LAGS treatment, as Nurse Sandhu was in fact working with Plaintiff's primary care provider, Dr. Dhillon's office.  (Reply 6.)

Plaintiff replies that the Defendant fails to respond to Plaintiff's specific arguments, specifically as to the ALJ's reason concerning the Nurse's failure to note the state and end date of the assigned limitations.  (Reply 5.)  Plaintiff also highlights that Defendant does not address the fact that the Nurse Sandhu's opinion was issued significantly later than the state agency opinions.  (Reply 6.)  Finally, Plaintiff replies that Defendant's reliance on the ALJ's statements elsewhere in the opinion regarding objective medical evidence did not support the need for leg elevation and extended sleep hours, and daily activities, is irrelevant as the ALJ did not proffer these reasons for rejecting Nurse Sandhu's opinion, and the Court cannot rely on these post-hoc rationales and must confine the review to the reasons provided by the ALJ.  (Reply 6-7.)

4.    The Court finds the ALJ Provided a Germane Reason to Discount Nurse Sandhu's Opinion

While the Court finds Plaintiff's emphasis on the fact that the state agency physician opinions were issued significantly earlier than Nurse Sandhu's opinion has some merit, giving due deference to the ALJ, and considering the germane reasons standard, the Court does not find remandable error.

The ALJ first stated "[n]o start or end dates were specified regarding the limitations." (AR 30.)  While at first glance this may not be critical when considering the treatment history, here, the form specifically requested information pertaining to a start date.  The Court notes that Nurse Sandhu did check the box stating that the impairments lasted or can be expected to last at least twelve months.  (AR 903.)  However, where the form asks: "What is the earliest date the limitations noted above would apply?" Nurse Sandhu left the form completely blank without an answer.  Given the fact that this opinion was issued later than the other medical opinions on file, the Court cannot say the ALJ's noting of the absence of such information was not significant to the ALJ's discounting of the opinion.  The ALJ did not simply opine start and end dates were absent generally from an open-ended form of an opinion, but rather specifically reviewed and noted the absence of such information where it was specifically requested in the form.  (AR 906.) Further, even if the lack of information pertaining to a specific dates of a period of disability were not sufficient to meet the germane reasons standard, the Court finds the ALJ's reliance on

the fact that Nurse Sandhu's opinion was inconsistent with the other acceptable medical source opinions provides a sufficient germane reason, standing alone or when considered together with the first reason concerning the incomplete nature of the form opinion completed by Nurse Sandhu.   See Bond v. Saul, 839 F. App'x 142, 143 (9th Cir. 2021) ("Contradiction with a doctor's opinion is a germane reason for discounting a nurse practitioner's opinion . . . Therefore, the ALJ did not err.") (citing Britton v. Colvin, 787 F.3d 1011, 1013 (9th Cir. 2015) ("The administrative law judge discounted Keith's testimony for a good reason: namely, that Dr. McBarron had testified that Britton *was* capable of light work."); Schnorr v. Comm'r of Soc. Sec. Admin., No. CV-20-00712-PHX-DLR, 2021 WL 3030218, at *2 (D. Ariz. July 19, 2021) ("Moreover, the ALJ found NP Dye's opinions to be contradicted by the assessments of treatment providers who repeatedly found Plaintiff negative for depression and anxiety and that reported her psych status as 'normal.' "); Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001) ("In all, the ALJ at least noted arguably germane reasons for dismissing the family members' testimony, even if he did not clearly link his determination to those reasons."); Mason v. Berryhill, No. 3:16-CV-02245-MC, 2018 WL 1448557, at *5 (D. Or. Mar. 23, 2018) ("In rejecting testimony from other sources, the ALJ only has to give 'arguably germane reasons,' and need 'not clearly link his determination to those reasons.' ") (quoting Lewis, 236 F.3d at 512); Sawyer v. Comm'r of Soc. Sec. Admin., No. CV-20-08269-PCT-DGC, 2021 WL 6124569, at *4 (D. Ariz. Dec. 28, 2021) (same); but see Keri C. v. Comm'r of Soc. Sec., No. 3:17-CV-01368-AA, 2018 WL 4909904, at *7 (D. Or. Oct. 10, 2018) ("While the court in *Lewis* found that 'arguably germane reasons' were sufficient, more recent cases have made clear not only that the reasons provided must be germane, but also that the reasons must be specific.").[6]

Although not necessary to render a decision of non-error, while Plaintiff argues Defendant's references to the ALJ's statements elsewhere in the opinion regarding objective

---

[6]  The Court would additionally find the reasons provided by the ALJ here to be sufficiently specific, in that the first reason was specific to the incompleteness of the form, and the second reason is sufficiently specific in that Nurse Sandhu's opinion was in fact inconsistent with the other medical opinions, which were specifically weighed and summarized elsewhere in the opinion.  Bond, 839 F. App'x at 143; Britton, 787 F.3d at 1013; but see Poulin v. Berryhill, No. 3:16-CV-05752-DWC, 2017 WL 1055792, at *4 (W.D. Wash. Mar. 21, 2017) ("[T]he ALJ found Nurse Wright's opinions were inconsistent with the totality of the evidence in the record, but failed to provide any details or reasons to support this conclusion.").

1    medical evidence not supporting the need for leg elevation and extended sleep hours, and daily

2    activities, are irrelevant as the ALJ did not proffer these reasons for rejecting Nurse Sandhu's

3    opinion, the Court notes that may not be true under the germane reasons standard.  See Johnson

4    v. Comm'r of Soc. Sec., No. 1:20-CV-00496-EPG, 2022 WL 1138123, at *8 (E.D. Cal. Apr. 18,

5    2022) ("As discussed above, the ALJ provided legally sufficient reasons for rejecting Plaintiff's

6    similar testimony regarding the nature and extent of her symptoms.  Thus, the ALJ provided

7    sufficient germane reasons to give little weight to Ms. Stokes' opinion.").

8        Accordingly, the Court finds the ALJ provided germane reasons supported by substantial

9    evidence in the record to accord reduced weight to Nurse Sandhu's opinion and the ALJ did not

10   commit legal error.  See Young v. Comm'r of Soc. Sec., 594 F. App'x 914, 917 (9th Cir. 2014)

11   ("The ALJ gave several germane reasons [including that it] . . . was not consistent with the

12   findings of the clinical neuropsychologist and the state agency's psychiatric consultant."); Bond,

13   839 F. App'x at 143; Lewis, 236 F.3d at 512.

14                                                **V.**

15                                **CONCLUSION AND ORDER**

16       Based on the foregoing, the Court finds that the ALJ did not commit remandable error in

17   evaluating Plaintiff's small fiber neuropathy, in weighing Plaintiff's testimony, and in

18   evaluating a nurse practitioner's opinion.  The Court finds the ALJ's decision to be free from

19   remandable legal error and supported by substantial evidence in the record.  Accordingly, IT IS

20   HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social

21   Security is DENIED.  It is FURTHER ORDERED that judgment be entered in favor of

22   Defendant Commissioner of Social Security and against Plaintiff Latisha Linda Kaye Woods.

23   The Clerk of the Court is directed to CLOSE this action.

24

25   IT IS SO ORDERED.

26   Dated:   **May 13, 2022**
                                         _____
27                                       UNITED STATES MAGISTRATE JUDGE

28